**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------------------x
                                 :

PREMA P. THEKKEK and          :    Case No. 1:11-cv-04426-HB
ANTONY P. THEKKEK,          :    [Hon. Harold Baer, Courtroom 23B]
                                 :

       Plaintiffs,           :

       vs.                :
                                 :

LASERSCULPT, INC. and STEVEN A.  :
VICTOR, and Does 1 to 10,      :

       Defendants.       :
-------------------------------------------------------------------- x

### MEMORANDUM OF LAW IN OPPOSITION
### TO DEFENDANT'S MOTION TO DISMISS

TORIN A. DORROS (SDNY No. TD9568)
tdorros@mrllp.com
MARK R. WINSTON
mwinston@mrllp.com
**MICHELMAN & ROBINSON, LLP**
15760 Ventura Boulevard, 5th Floor
Encino, California 91436
P:  (818) 783-5530, F:  (818) 783-5507

THOMAS V. CANEPA
(*Pro hac vice admission pending*)
tcanepa@bupdlaw.com
**BROWN, UDELL, POMERANTZ & DELRAHIM, LTD**
1332 North Halsted Street, Suite 100
Chicago, Illinois 60642
P:  (312) 475-9900, F:  (312) 475-1188

*Attorneys for Plaintiffs,*
*PREMA P. THEKKEK and ANTONY P.*
*THEKKEK*

# TABLE OF CONTENTS

I.    INTRODUCTION ............................................................................................... 1

II.   ARGUMENT .................................................................................................... 2

      A.   Standard Of Review On A Motion To Dismiss ..................................... 2

      B.   Defendant's Motion To Dismiss Is Procedurally Defective ................. 4

      C.   Plaintiffs' Accounting Claim Should Withstand Defendant's Motion to Dismiss. ...... 5

           1.   Plaintiffs Accounting Claim Is Well Pled ................................... 5

           2.   Defendant Lasersculpt Has Not Moved To Dismiss Any Claims And Therefore
                The Accounting Claim Against Lasersculpt Must Survive. .................. 6

      D.   Plaintiffs' Breach of Fiduciary Claim Is Well Pled And Should Survive Defendant's
           Motion to Dismiss. ............................................................................... 6

           1.   Defendant Incorrectly Selects Delaware Law As The Governing Law On
                Plaintiffs' Breach Of Fiduciary Duty Claim .............................. 7

           2.   Defendant Owed And Breached His Fiduciary Duty To Plaintiffs ...... 8

      E.   Plaintiffs' Tortious Interference with Contract Claim Is Well Pled And Should
           Survive Defendant's Motion to Dismiss. ................................................ 14

      F.   Plaintiffs' Breach of Contract By Way Of Piercing The Corporate Veil Claim Is Well
           Pled. ..................................................................................................... 15

III.  CONCLUSION ............................................................................................... 23

# TABLE OF AUTHORITIES

## Cases

*AHA Sales, Inc. v. Creative Bath Prod.*,
58 A.D.3d 6, 23 (N.Y. App. Div. 2008)...................................................................................... 9

*Amusement Indus., Inc., v. Stern*,
693 F. Supp. 2d 301 (S.D.N.Y. 2010)...................................................................................... 3

*Anwar v. Fairfield Greenwich Ltd.*,
728 F. Supp. 2d 372 (S.D.N.Y. 2010) *reconsideration denied,* 09 CIV 0118 VM, 2010 WL
3834052 (S.D.N.Y. Sept. 20, 2010) and *reconsideration denied,* 09 CIV 0118 VM, 2010 WL
3834057 (S.D.N.Y. Sept. 13, 2010) and *reconsideration denied,* 800 F. Supp. 2d 571, 2011
WL 3359691 (S.D.N.Y. 2011) ................................................................................................ 9

*Ashcroft v. Iqbal*,
129 S. Ct. 1937, 173 L.Ed.2d 868 (2008). .............................................................................. 3

*Bell Atlantic Corp., v. Twombly*,
127 S.Ct.1955, 167 L.Ed.2d 929 (2007); ............................................................................... 3

*Bradbury v. Phillips Petroleum Co.*,
815 F.2d 1356 (10th Cir.1987)............................................................................................... 22

*Carr v. Health Ins. Plan of Greater N.Y., Inc.*,
No. 99 Civ. 3706(NRB), 2001 WL 563722, at *4 (S.D.N.Y. May 24, 2001) ........................ 22

*Crock v. Lindsay*,
97 F.3d 640 (2d Cir. 1996)...................................................................................................... 7

*Deluca v. Allied Domecq Quick Serv. Restaurants*,
71 Fed. R. Evid. Serv. 380, 2006 WL 2713944 (E.D.N.Y. Sept. 22, 2006), ......................... 22

*Ella v. Jackson*,
216 F.3d 1071 (2d Cir. 2000).................................................................................................. 2

*Finance One Pub. Co. v. Lehman Bros Special Fin., Inc.*,
414 F.3d 325 (2d. Cir. 2005)................................................................................................... 7

*Foman v. Davis*,
371 U.S. 178 (1962) ................................................................................................................ 3

*GlobalNet Financial Com. v. Frank Crystal & Co.*,
   449 F.3d 377 (2d Cir. 2006) ............................................................... 7

*Hospital Building Co. v. Trustees of Rex Hospital*,
   425 U.S. 738, 96 S.Ct. 1848 (1976) .................................................... 2

*IMG Fragrance Brands, LLC v. Houbigant, Inc.*,
   679 F. Supp. 2d 395, 2009 WL 5171741 (S.D.N.Y. 2009) ................... 5

*Inline Connection Corp. v. AOL Time Warner Inc.*,
   470 F. Supp. 2d 435 (D. Del. 2007) .................................................. 22

*Jenkins v. McKeithen*,
   395 U.S. 411 (1969). ........................................................................... 2

*Keith v. Black Diamond Advisors, Inc.*,
   48 F.Supp.2d 326 (S.D.N.Y. 1999) .................................................... 2

*Mackey v. Dicaprio*,
   No. 02CIV.1707(BSJ)(RLE), 2006 WL 2572111 (S.D.N.Y. Sept. 7, 2006) .............................. 3

*Michelson v. Hamada*,
   29 Cal.App.4th 1566, 36 Cal.Rptr.2d 343 (1994) ............................ 10

*Musalli Factory for Gold & Jewellry v. JPMorgan Chase Bank*,
   261 F.R.D. 13 (S.D.N.Y.2009), ........................................................... 8

*NBT Bancorp Inc. v. Fleet/Norstar Financial Group Inc.*,
   87 N.Y. 2d 614 (N.Y. 1996) .............................................................. 14

*Negrete v. Fid. & Guar. Life Ins. Co.*,
   444 F. Supp. 2d 998 (C.D. Cal. 2006) .............................................. 10

*Pierce v. Lyman*,
   1 Cal.App.4th 1093, 3 Cal.Rptr.2d 236 (1991) .................................. 9

*Primetime 24 Joint Venture v. National Broadcasting Company, Inc.*,
   2000 WL 913348 (2d Cir. 2000). ........................................................ 2

*Prince v. Madison Square Garden*,
   427 F. Supp. 2d 372 (S.D.N.Y. 2006) ............................................... 17

*Rachman Bag Co. v. Liberty Mut. Ins. Co.*,
   46 F.3d 230 (2d Cir.1995) ................................................................... 3

*Reed Constr. Data Inc., v. The McGraw-Hill Companies, Inc.*,
  745 F. Supp. 2d 343 (S.D.N.Y. 2010) ............................................................. 3

*Residential Funding Corp. v. DeGeorge Financial Corp.*,
  306 F.3d 99 (2d. Cir. 2002) ......................................................................... 19

*Sunstar, Inc. v. Alberto-Culver Co.*,
  No. 01 C 0736, 2004 WL 1899927(N.D.Ill. Aug. 23, 2004) ........................ 22

*Villager Pond, Inc. v. Town of Darien*,
  56 F.3d 375 (2d Cir. 1995)) ........................................................................... 3

*Wultz v. Bank of China*,
  ---F---, 2011 WL 2423792 (S.D..N.Y. August 3, 2011) ............................... 7

*York Linings v. Roach*,
  No. 16622–NC, 1999 WL 608850, at *2 (Del.Ch. July 28, 1999) .................. 8

**Statutes**

Federal Rules of Civil Procedure
  Rule 8(a) ........................................................................................................... 1
  Rule 8(a)(2). ..................................................................................................... 3
  Rule 12(b)(6) ......................................................................................... 1, 2, 23
  Rule 15 ............................................................................................................. 3
  Rule 15(a) ......................................................................................................... 3

**Other Authorities**

Individual Practices of Judge Harold Baer, Jr. (Rev. 5/16/2011) ("HB Indiv.P."), § 5G .............. 4

Plaintiffs PREMA P. THEKKEK and ANTONY P. THEKKEK ("Plaintiffs" or the "Thekkeks") respectfully submit their Opposition to Defendant, Steven A. Victor's ("Defendant" or "Victor") Motion to Dismiss (Dkt. 23).

## I.   **INTRODUCTION**

Whether Defendants wish to spin it differently is irrelevant—Defendant Steven Victor conned Plaintiffs out of well more than half a million dollars and now wishes to claim unaccountability, hiding behind the fabrication and shell of a company that he created to siphon off funds from unsuspecting investors believing they were investing into a ongoing and potentially highly successful company—when in fact they were simply essentially providing funds directly to Defendant Victor for his personal use, and/or use not authorized or contemplated relative to the investment and company, Lasersculpt.  Indeed, Defendant Victor convinced Plaintiffs into loaning Defendants $500,000 in cash and further purchasing close to a million shares of Lasercsulpt (840,000 to be exact), yet made not a single attempt to repay one dollar of the actual funds loaned, nor any meaningful effort to grow the purposed business venture he manipulated investors, like Plaintiffs, into undertaking.  The First Amended Complaint ("FAC" Dkt 21) is replete with the necessary factual and substantive allegations required to survive Defendant's Motion to Dismiss.

Defendant now seemingly moves to dismiss Plaintiffs' FAC as to all claims asserted against Defendant Victor.  However the FAC and its claims are well pled and certainly sufficiently enough to withstand the minimal pleading test imposed through FRCP Rules 12(b)(6) and 8(a) and the *Iqbal* and *Twombly* line of cases.  The FAC pleads facts sufficient to plausibly provide Defendant a basis to understand the claims against him and further addresses each of Defendant's concerns raised in his original motion to dismiss, whether or not such

concerns were unfounded.  Plaintiffs' FAC is pled well sufficient to move forward on each of the alleged claims.[1]  Significantly, Victor purports to move to dismiss Plaintiffs' accounting claim in its entirety.  However such claim is lodged as to *both* Defendant Lasersculpt, Inc. and Defendant Steven Victor.  At bare minimum the accounting claim as against Defendant Lasersculpt must survive given that Defendant Lasersculpt did not move to dismiss this action, but rather filed an Answer on its behalf. (Dkt. 24)[2]

## II.   <u>ARGUMENT</u>

### A.  <u>Standard Of Review On A Motion To Dismiss</u>

Dismissal of a complaint pursuant to Fed.R.Civ.P. 12(b)(6) is proper only where a complaint fails to allege facts which support the elements of an asserted cause of action. *Hospital Building Co. v. Trustees of Rex Hospital*, 425 U.S. 738, 96 S.Ct. 1848 (1976); *Ella v. Jackson*, 216 F.3d 1071 (2d Cir. 2000); *Primetime 24 Joint Venture v. National Broadcasting Company, Inc.*, 2000 WL 913348 (2d Cir. 2000).

In ruling on a Rule 12(b)(6) motion, the Court's task is to "assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Keith v. Black Diamond Advisors, Inc.*, 48 F.Supp.2d 326, 329 (S.D.N.Y. 1999) (citation omitted). In deciding such a motion, the court must accept as true all material facts alleged in the nonmovant's favor. *Id.*  The complaint is to be "liberally construed in favor of plaintiff". *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969). The issue "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the

---

[1] Plaintiffs also note that the parties might have been spared the expense of proceeding with potentially even further motions to dismiss or amended complaints *had Defendants not refused to produce documents until after Plaintiffs filed their FAC*.  Plaintiffs fully expect that such documents will further support the well pled allegations and facts forwarded in the FAC.

[2] Indeed Lasersculpt's Answer (Dkt. 24) evidences that there is no dispute between the parties as to the amount and terms of the note and loan in dispute, that the loan and note were not repaid, that the Plaintiffs were owed repayment of the loan and note, that the loan and note were defaulted upon, and that Plaintiffs are entitled to damages for the default on the loan and note.

claims." *Reed Constr. Data Inc., v. The McGraw-Hill Companies, Inc.*, 745 F. Supp. 2d 343 (S.D.N.Y. 2010) (citing *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995)). A complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Detailed facts are not required." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1940, 173 L.Ed.2d 868 (2008). The complaint must merely contain sufficient factual allegations so as to, "state a claim for relief that is plausible on its face." *Bell Atlantic Corp., v. Twombly*, 127 S.Ct.1955, 1973, 167 L.Ed.2d 929 (2007); *Ashcroft v. Iqbal*, 129 S. Ct., at 1940 ("a claim has facial plausibility when the pled factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

Moreover, "while a Court typically examines only the allegations of a pleading on a motion to dismiss," where, as here, documents are attached to the Complaint and incorporated therein by reference, such documents "are deemed part of the pleading" and are properly considered by the Court. *Amusement Indus., Inc., v. Stern*, 693 F. Supp. 2d 301, 305 (S.D.N.Y. 2010).

Finally, to the extent courts deem it appropriate to grant all or part of a motion to dismiss courts are generally cautioned to grant such dismissal with a liberal allowance to replead pursuant to Fed.R.Civ.P. Rule 15.  See e.g., *Mackey v. Dicaprio*, 02CIV.1707(BSJ)(RLE), 2006 WL 2572111 (S.D.N.Y. Sept. 7, 2006) ("Rule 15(a) specifies that leave to amend shall be freely given when justice so requires. Since this rule is interpreted liberally, *Rachman Bag Co. v. Liberty Mut. Ins. Co.,* 46 F.3d 230, 234 (2d Cir.1995), an amendment is normally permitted, and the refusal to grant leave without justification is 'inconsistent with the spirit of the Federal Rules.' *Foman v. Davis,* 371 U.S. 178, 182 (1962).")

### B. **Defendant's Motion To Dismiss Is Procedurally Defective**

Preliminarily, Defendant's Motion should be denied for failing to adhere to the rules of this Court.  Pursuant to this Court's Individual Rules, upon the filing of an amended complaint, Defendant had three options: "If the party amends, the opposing party may then (1) file an answer (2) file a new motion to dismiss or (3) submit a letter stating that they will rely on the initially filed motion to dismiss.  (See Individual Practices of Judge Harold Baer, Jr. (Rev. 5/16/2011) ("HB Indiv.P."), § 5G.) (emphasis added.)  Moreover, HB Indiv.P § 5C specifically restricts the page count with respect to memoranda of law: "Unless prior permission has been granted, memoranda of law in support of and in opposition to motions are limited to 25 pages . . .."  HB Indiv.P § 5B.  Nevertheless, Defendant fails to adhere to both of these fundamental and facially simply procedural requirements.

In a blatant attempt to file two motions to dismiss as one, Defendant filed his 12 page current Motion to Dismiss as to Plaintiffs' First Amended Complaint ("Motion") (Dkt. 23) attaching as an exhibit the entirety of his prior 16 page motion to dismiss filed with respect to Plaintiff's original Complaint (Dkts. 23-1 and 14) for a total of 28 pages of motion argument.  This is nothing more than a blatant attempt by Defendant to do an end run around the Court's rules.  HB Indiv.P §5G permitted Defendant to either to (1) file either a new motion or (2) rely on his original motion.  Instead, Defendant has filed both a new motion and relied on his original motion at the same time.  Moreover, even if such were permissible, which it is not, the submitted papers exceed the maximum number of pages allowable pursuant to HB Indiv.P. §5B— Defendant has filed 28 pages of motion argument when only 25 are permitted.

Defendant's motion tactics make it inordinately difficult to prepare an Opposition given the requirement of unnecessarily having to attempt to meld Defendant's current and original motions

together, coupled with the forced requirement of needing to flip back and forth between documents to determine the purported substantive bases for Defendant's motion.   This underscores the importance of adhering to the Court's rules and requirements of filing a single motion (whether it is a new motion or simply relying on the original motion in toto)—doing otherwise, as Defendant does now, simply unnecessarily confuses and complicates the review of motion papers for both the opposing party and the Court.

As such this Court should deny Defendant's Motion in its entirety for failure to adhere to even the most basic of the Court's procedural rules.    Nevertheless, to the extent the Court were to allow Defendant's Motion to move forward, it would be appropriate for the Court to strike Defendant's Exhibit 1 to the Motion (Defendant's original motion to dismiss to the original complaint) in its entirety and not consider any argument within such document and/or any argument in the new motion solely referring to or relying upon the original motion.

### C. <u>Plaintiffs' Accounting Claim Should Withstand Defendant's Motion to Dismiss.</u>

#### 1. **Plaintiffs Accounting Claim Is Well Pled.**

To properly plead a claim for accounting a complaint must plead under New York law "'(1) relations of a mutual and confidential nature; (2) money or property entrusted to the defendant imposing upon him a burden of accounting; (3) that there is no adequate legal remedy; and (4) in some cases, a demand for an accounting and a refusal.'" (citations) *IMG Fragrance Brands, LLC v. Houbigant, Inc.*, 679 F. Supp. 2d 395, 411, 2009 WL 5171741 (S.D.N.Y. 2009).  Plaintiffs have unquestionably pled the requisite allegations to pass muster with respect to a motion to dismiss.   Indeed Plaintiffs allege that the Defendants were in a fiduciary relationship with Plaintiffs (FAC ¶85); that Plaintiffs loaned money to Defendants, i.e. entrusted such funds to Defendants (FAC ¶86); that an accounting is justified, i.e. that such equitable remedy is the

proper remedy with no legal remedy available based upon Defendant's failure to provide financials and the complex nature of the relationships of the various parties and entities (FAC ¶¶ 87-89); and that Defendants failed to provide financials and other information though demanded (FAC ¶ 87). As such the accounting claim is well pled as to both Defendants and Defendant Victor's Motion to Dismiss should be denied in its entirety.

## 2. Defendant Lasersculpt Has Not Moved To Dismiss Any Claims And Therefore The Accounting Claim Against Lasersculpt Must Survive.

Defendant Victor seemingly attempts to move to dismiss Plaintiffs' accounting claim in toto. However, the accounting claim is alleged as against all the Defendants not merely Defendant Victor. Therefore no other defendant, including Lasersculpt, has moved to dismiss the accounting claim thus requiring the claim to survive at bare minimum with respect to such other defendants. As to Defendant Victor, the claim is well pled as argued above. Therefore Defendant's Motion should be denied in its entirety.

## D. Plaintiffs' Breach of Fiduciary Claim Is Well Pled And Should Survive Defendant's Motion to Dismiss.

As indicated, Defendant's improper motion practice style and format make it difficult to discern the fundamental argument of the instant motion. Indeed, it requires bouncing back and forth between the current Motion and the improperly attached original motion to dismiss. It seems much of Defendant's complaints arise out of Plaintiffs "upon information and belief" pleading technique. However, pleading "upon information and belief" is an entirely permissible pleading style under the federal rules and therefore not a basis to dismiss the claims, especially given the significant factual allegations pled throughout the FAC in support of Plaintiffs' claims.

1.  **Defendant Incorrectly Selects Delaware Law As The Governing Law On Plaintiffs' Breach Of Fiduciary Duty Claim**

Defendant attempts to casually assert Delaware law as that which governs this claim.  It does not.  Whether in tort or contract, New York choice of law analysis reveals that Delaware is law not the applicable governing law—rather the Court should look either to New York or California law depending on how it weighs the relevant factors.

As this court has traditionally recognized, the critical analysis concerns location of the facts that lay at the foundation of the underlying dispute.  *Wultz v. Bank of China*, ---F---, 2011 WL 2423792 (S.D..N.Y. August 3, 2011), citing *GlobalNet Financial Com. v. Frank Crystal & Co*., 449 F.3d 377, 384 (2d Cir. 2006)(internal citation omitted).  The parties in *GlobalNet* have relationships similar to the parties here.  *GlobalNet*, 449 F.3d at 379.  There, the plaintiff was a Delaware corporation with offices in Florida and some contacts in New York; the defendant meanwhile was headquartered, incorporated and registered in New York.  The second circuit undertook the forum state (New York)'s choice of law analysis and determined New York law applied.  *Id*. at 384.  In *Finance One Pub. Co. v. Lehman Bros Special Fin., Inc*., 414 F.3d 325, 337 (2d. Cir. 2005), the Second Circuit noted that "the preferred analytical tool in tort cases is to apply 'interest analysis,' where the policies underlying the competing laws are considered."  *Id*.  That court further indicated that the interest analysis is a "flexible approach intended to give controlling effect to the law of the jurisdiction which, because of its relationship or contact with the occurrence or the parties, has the greatest concern with the specific issue raised in the litigation."  In *Crock v. Lindsay*, 97 F.3d 640, 645 (2d Cir. 1996), the Second Circuit considered a suit in contract law under the laws of the Commonwealth of Massachusetts and the considered the derivative fraud cause of action under New York Law.

Here, Defendant incorrectly attempts to assert Delaware substantive law as applicable to Plaintiffs' fiduciary duty claim.   However, while Defendant Lasersculpt may have been incorporated in Delaware, neither is it the moving party, nor do any of the operative facts arise out of Delaware.  Indeed, Plaintiffs reside in the San Francisco, California region (Bay Area) and made their investment and loan to Defendants from California.   In fact, Plaintiffs entire relationship and all dealings with Defendants were conducted from California.   Moreover, Defendants—both Victor and Lasersculpt—fundamentally reside or are headquartered in New York City, with Lasersculpt purportedly doing, or having done, business in other states around the country including California.   Defendant concedes both that Victor is a Manhattan Dermatologist and that Lasersculpt was operated out of the same location as Victor's medical practice in New York City.  As such California or New York law is the far more appropriate substantive law to apply to the claim—not Delaware law as Defendant contends.[3]

### 2.  Defendant Owed And Breached His Fiduciary Duty To Plaintiffs

In New York, the elements of a claim for breach of fiduciary duty are "breach by a fiduciary of a duty owed to plaintiff; defendant's knowing participation in the breach; and damages." *Pension Comm.,* 446 F.Supp.2d at 195. A fiduciary relationship arises where "one party's superior position or superior access to confidential information is so great as virtually to require the other party to repose trust and confidence in the first party," and the defendant was "under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation." *Id.* at 195–96 (citation omitted). Whether the duty exists is a fact-specific inquiry. *Id.* at 196 (citation omitted); *see also Musalli Factory for Gold & Jewellry v. JPMorgan Chase Bank,* 261 F.R.D. 13, 26 (S.D.N.Y.2009), *aff'd.,* 382 Fed.Appx. 107 (2d Cir.2010) ("New York courts generally avoid dismissing a claim of breach of fiduciary duty ... because it usually involves a question of fact: whether someone reposed trust and confidence in another who thereby gains a resulting superiority or influence.").

---

[3] To the extent that Delaware law were to be found to be the applicable governing law, Defendant's should still be denied.  The FAC pleads all of the requisite elements for a breach of fiduciary claim whether under New York, California, or Delaware law.  Under Delaware law, the elements of a claim for breach of fiduciary duty include (1) the existence of a fiduciary duty and (2) a breach of that duty. See *York Linings v. Roach,* No. 16622–NC, 1999 WL 608850, at *2 (Del.Ch. July 28, 1999)  (FAC ¶¶ 63-70)

*Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 372, 415 (S.D.N.Y. 2010) *reconsideration denied,* 09 CIV 0118 VM, 2010 WL 3834052 (S.D.N.Y. Sept. 20, 2010) and *reconsideration denied,* 09 CIV 0118 VM, 2010 WL 3834057 (S.D.N.Y. Sept. 13, 2010) and *reconsideration denied,* 800 F. Supp. 2d 571, 2011 WL 3359691 (S.D.N.Y. 2011)

Despite Defendant's argument, the law is clear that there existed a fiduciary duty that Defendant owed Plaintiffs.  As the appellate courts in New York have explained, a fiduciary relationship "whether formal or informal, is one founded upon trust or confidence reposed by one person in the integrity and fidelity of another . . . [and] might be found to exist, in appropriate circumstances, between close friends . . . or even where confidence is based upon prior business dealings" *AHA Sales, Inc. v. Creative Bath Prod*., 58 A.D.3d 6, 23 (N.Y. App. Div. 2008)(internal citation and quotations omitted).  Moreover, the *AHA Sales* Court highlighted that "the [fiduciary] relationship exists in all cases in which influence has been acquired and abused, in which confidence has been reposed and betrayed." *Id*. (internal citation omitted).  While the Court did caution that a "conventional business relationship, without more, is insufficient to create a fiduciary relationship" (*Id*), the Court noted that the fiduciary relationship may be established in cases involving  "'special circumstances'" (*Id*.) such as those involving a defendant's "inducements" as to a plaintiff, by "representations that [plaintiffs] could trust [defendant]," or other means or measures invoked by a defendant to prey upon the plaintiff's reliance and/or trust in defendant as a result of their relationship. *Id*. at 23-25.

Under California law, "[i]n order to plead a claim for breach of fiduciary duty, the claimant must allege (1) the existence of a fiduciary relationship giving rise to a fiduciary duty, (2) breach of that duty, and (3) damage proximately caused by the breach. *Pierce v. Lyman,* 1 Cal.App.4th 1093, 1101, 3 Cal.Rptr.2d 236 (1991). Whether a fiduciary relationship exists in any

given situation is a question of fact. *Michelson v. Hamada,* 29 Cal.App.4th 1566, 1575-1576, 36 Cal.Rptr.2d 343 (1994)" *Negrete v. Fid. & Guar. Life Ins. Co.*, 444 F. Supp. 2d 998 (C.D. Cal. 2006).

Plaintiffs have indeed alleged that there existed a fiduciary relationship between the parties, that Defendant breached the duty flowing from such fiduciary relationship, and as a result Plaintiffs have suffered damages. (FAC ¶¶ 63-70) As such the claim is properly pled under both New York and California law sufficient to survive Defendant's Motion to Dismiss.[4] Here, Defendant was the sole Director and majority shareholder of the venture, the purported investment into which Defendant was pulling Plaintiffs. Through representations about the robust health of the company, Defendant, on July 2, 2009, induced Plaintiffs to sign a Note, invest a half a million dollars with Defendant, and purchase nearly a million shares in the purported company so lauded by Defendant, when he knew that the financial health could not support the Note and investment, causing a detriment to Plaintiff. Defendant carried on this course of conduct of many months, all while paying himself an exorbitant salary of hundreds of thousands of dollars and improperly paying himself time and again multiple rents on a single premise under the guise of (now purportedly) a fictitious rent sharing arrangement.

Significantly, even Defendants admit through Defendant Lasersculpt's Answer that Victor took the salary for services at least in part unrelated to Lasersculpt. Indeed Defendant "admits that for the period August 2007 to June 30, 2009, LaserSculpt paid defendant Victor a salary of $250,000 for his services as CEO of LaserSculpt and its predecessor VPI." (Dkt. 24, p. 4, ¶27) (emphasis added.) In no way were Plaintiffs ever contemplating investing in the VPI venture—nor did they. The concept that the salary was for services performed prior to the Note

---

[4] As noted, even if the Court were to apply Delaware law, the FAC properly pleads a claim for breach of fiduciary duty.

10

is simply a red herring. Plaintiffs were led to believe they were investing in Lasersculpt an ongoing future looking venture, which purportedly needed funds to move forward—in no way were Plaintiffs seeking to pay off debts of prior companies and past services wholly unrelated to the purported Lasersculpt venture. Defendant admits that Lasersculpt and those financing the venture were subjected to incurring the cost of compensating Victor for his services as <u>CEO of VPI</u>. This was not a contemplated aspect of Plaintiffs' loan/Note or investment. In fact the so called Risk Factors, on which Defendant so heavily relies, professes that VPI is an entirely separate and distinct company from that of Lasersculpt—nevertheless Defendant argues it is of no relevance that investors in Lasersculpt were made responsible for the salary of the <u>VPI</u> CEO.

As to the issue of Defendant's improper rent tactics, it is evident that Defendant seeks to hide behind the concept of "rent sharing". However the premises at which each of the numerous entities supposedly were headquartered is the identical condominium unit office. This is not the situation involving office sharing or leasing such as one finds in the corporate office buildings where an attorney or accountant (or anyone or any entity for that matter) may lease/rent an office(s) with access to the phone system, mail services, reception, conference room, etc. In contrast, here, Defendant uses the office for his medical practice and has apparently now multiple times engaged in seeking out investors in various ventures to fund such companies only to have them purportedly operate out of the same office space (and apparently use the same employees) as his medical practice. Necessarily however that would entail Defendant also to have actively promoted and attempted to grow and foster the business, including that of Lasersculpt. Nevertheless, it is plainly evident that Defendant did nothing of the sort, but rather simply took investors' (like Plaintiffs) funds and used such money to pay himself rent and cover the costs associated with his medical practice. Indeed, rather than realistically attempting to

move forward with the Lasersculpt venture, Defendant walked away entirely without notice and moved on to the Intellicell Biosciences concept—which too is now also run out of the very same office space.   Certainly the concept of rent sharing is one that can be appropriate under the proper business setting and factual scenario.   However, such business relationship may not simply be a fiction to sidestep the inability to engage in double or triple rent.   Necessarily if the business is simply a shell, or is not being actively promoted, or is no longer active or viable then this so called rent for the rent sharing concept is nothing more than a sham to siphon off funds from the company and investors to that of the CEO and landlord.   Indeed, the very fact that Defendant claims to be <u>both</u> the landlord <u>and</u> the CEO, president, or other key principal of multiple entities all operating out of the same office and all paying separate rent to Defendant highlights the conflicts of interest and fiduciary problems flowing from such relationship.

Significantly, though Defendant now wishes to separate the various entities for purposes of justifying his taking multiple rents to pay himself, Defendant at the same time argues that his salary was for services provided prior to Plaintiffs' investment—for his services as CEO of Lasersculpt <u>and CEO of VPI</u>.   Nevertheless, Defendant now seeks to claim that each entity separately was sharing the office space and separately responsible for such rent paid to Defendant.   The financials of, and asserted relationships between, these various entities are nothing more than concocted fictions to allow for Defendant to personally siphon as much of the funds of the entities for his personal use or for payment of his personal or medical practice expenses entirely unrelated to the ventures into which the investors, such as Plaintiffs, sunk funds.

As to the arguments raised by Defendant in his original motion, they are simply moot. Plaintiffs addressed Defendant's concerns in the FAC and the original motion is moot as a result

of the filing of the FAC.   As to Defendant's argument that no fiduciary duty is owed to a debenture holder, Plaintiffs note that Plaintiffs are not merely noteholders, but also are owners of 840,000 shares in Lasersculpt.   Defendant's argument that no fiduciary duty could arise until such time as Plaintiffs became shareholders fails on its face given that Plaintiffs were and have been shareholders at all relevant times.   Moreover, Defendant disingenuously seems to imply that there exists no fiduciary duty relative to corporate disclosures, yet throughout Defendant's motion Defendant consistently relies on the argument that Plaintiff's had a right and obligation under Delaware law to request financial and other disclosure from Defendants.   (See e.g. Motion pp. 3 and 4.)   Indeed, Plaintiffs numerous times requested that Defendants produce or disclose the very information guaranteed of them under the Delaware Code, nevertheless Defendants did not produce or disclose all of such information to Plaintiffs, as alleged in the FAC.   This is not dissimilar to Defendant's refusal to produce documents in response to Plaintiff's document requests.   Presumably the very documents that Defendant attempts to hide behind should have been produced in response to the document requests, especially given the fact that certain requests go directly to the company's financials and other information covered under the cited Delaware Code.   Nevertheless Defendant refused to produce the documents until after Plaintiffs filed the FAC.

The FAC coherently sets forth the facts and allegations supporting the breach of fiduciary duty claim and the existence of the fiduciary relationship itself.   Indeed the FAC highlights the trust Plaintiffs put into Defendant with respect to the investment and loan and business venture as a direct result of Defendant's representations to Plaintiffs and their dealings relative to the investment and loan.   Defendant's complete autonomy relative to the venture underscores the significant dependence Plaintiffs had as to Defendant and that Plaintiffs

necessarily were required to fundamentally and critically entirely rely on Defendant relative to the venture, the loan, and investment.  However, Defendant simply shirked his obligations with respect to Plaintiffs and Lasersculpt in favor of Intellicell BioSciences—a company again run out of the very same one unit condominium office as VPI, Lasersculpt, and Victor Orris Dermatology.  Leaving aside the obligations and duties imposed upon Defendant as a result of his role as majority shareholder and the Plaintiffs as minority shareholders, the inducements and representations made by Defendant to Plaintiffs created and fostered the fiduciary relationship between the parties and the  fiduciary duty which Defendant owed to Plaintiffs.  And as alleged in the FAC, Defendant breached such fiduciary duty resulting in damages to Plaintiffs.

The FAC is well pled and more specifically Plaintiffs breach of fiduciary duty claim pleads all of the requisite elements of the claim necessary to survive Defendant's Motion to Dismiss.  Moreover the facts as alleged are sufficient to support a showing of the existence of a fiduciary relationship from which the fiduciary duty that Defendant breached flowed.   Therefore Defendants' Motion should be denied.

### E.  <u>Plaintiffs' Tortious Interference with Contract Claim Is Well Pled And Should Survive Defendant's Motion to Dismiss.</u>

Defendants' Motion seeks to dismiss Plaintiffs' wholly justified claim of tortious interference with a contract ignoring the overwhelming evidence articulating a prima facie case.  Simply put, Plaintiffs' claim is well pled and should not be dismissed.  (FAC ¶¶ 71-83).

To plead a claim of tortious interference with contract, a party must show that a third party's conduct caused a preexisting contract to be breached.  *NBT Bancorp Inc. v. Fleet/Norstar Financial Group Inc*., 87 N.Y. 2d 614 (N.Y. 1996).  It is immaterial if the third party's conduct was lawful.  *Id*.  Here, the Defendant's treatment of Lasersculpt as merely a means of directing

funds to himself for his own personal use led to the breach of the Note contract with Plaintiffs. Defendant's conduct directly and proximately resulted in the default on the Note at issue in this action.  Indeed Defendant had exclusive control over the assets, means, funds, and resources which could have been used to grow the venture, generate revenue, and pay off the Note.  Rather Defendant failed to do so and instead intentionally moved on to other ventures with no intention of ever contemplating the repayment of the Note thus resulting in its breach and default.

Plaintiffs have pled facts and allegations throughout the FAC well sufficient to plausibly provide Defendant with an understanding of the factual and legal bases for the claim.  (FAC ¶¶ 72, 77 existence of contract; FAC ¶¶ 73, 74, 78  Defendant knowledge of the contract; FAC ¶¶ 74-76,  79-81 breach of the contract; FAC ¶¶ 74, 79-81 Defendant caused such breach; FAC ¶¶ 74, 79-81, 83 damages arising therefrom)  Moreover Plaintiffs have alleged relevant facts giving rise to liability for Defendant as a corporate director or officer involved in the tortious act, to the extent such analysis is necessary.  (FAC ¶¶ 71-83 and 75-76 and 80-81)  Whether factually Defendant disputes the claim is for another day.  Indeed much discovery is outstanding and has been thwarted by Defendant's prior refusal to produce the documents and subsequent refusal to cooperate and produce documents.  Such only begs the question of what further skeletons is Defendant hiding?  Regardless, however, this is the pleading phase, and Plaintiffs have sufficiently and properly pled their tortious interference claim.  Defendant's Motion should be denied in its entirety.

**F.  <u>Plaintiffs' Breach of Contract By Way Of Piercing The Corporate Veil Claim Is Well Pled.</u>**

The simple fact is that Defendant has nothing to complain about and is merely churning the waters to cloud what is clear.  Plaintiffs properly and sufficiently pled their breach of contract

claim or corporate veil claim or alter ego claim in the original Complaint, however to appease Defendant, Plaintiffs have subsequently addressed each of Defendant's expressed concerns. (FAC ¶¶ 46-62)  Nevertheless now Defendant argues that even though the claim is well pled and alleges the proper facts and/or allegations that the claim should still be dismissed.  Defendants even provided a roadmap as to what allegations Defendant believed were missing from the original Complaint (Dkt. 23-1, pp. 4-6) and accordingly Plaintiffs addressed each of those elements of the claim or demanded allegations in Plaintiffs' FAC. (FAC ¶¶ 46 to 62)

However, now Defendant purports to move to dismiss the entire claim relying on both Defendant's original motion to dismiss and Defendant's newly filed motion to dismiss—leaving Plaintiffs to guess at which arguments of Defendant's remain in play and which arguments Defendants are no longer asserting, thereby creating havoc in any attempt to adequately present an opposition.  Plaintiffs should not be required to try to interpret Defendant's multiple conjoined motions so as to develop Defendant's arguments for him.  Regardless, however, Defendant's Motion contains nothing more than factual attacks as to Plaintiffs' FAC contending that they are not plausible for Defendant to discern the basis for Plaintiffs' claims, while first providing the Court with his own interpretation of the facts he argues he cannot understand. Such in and of itself defeats Defendant's Motion. The standard is whether the facts alleged provide Defendant a plausible basis to "understand" the claim.  Indeed in his own words, throughout Defendant's Motion, Defendant has gone to great lengths to explain to the Court Defendant's understanding of the claims.  Such requires denial of Defendant's Motion.

Essentially it appears by Defendant's current Motion that Defendant complains of only a few allegations amidst the entire claim.  Indeed Defendant's current Motion fails to address the claim in total and as such concedes that such allegation are well pled and supportive of the claim itself

16

thus requiring denial of Defendant's Motion.  Much of what Defendant complains about is not substantive but rather the use of the phrase "upon information and belief" as a qualifier with respect to pleading.   Defendant himself concedes that such is permissible as a pleading technique.   In this particular case the pleading language is often truly stylistic.   However regardless of whether deemed stylistic or whether the Court looks to Plaintiffs' provision of factual support or allegations supporting the claims made on information and belief, Plaintiffs have throughout the FAC provided concrete factual or allegation support for the claims.  Indeed, Plaintiffs have submitted several exhibits to the FAC on which Plaintiffs can rely to base claims of "information and belief".   In fact each claim specifically incorporates all of the facts alleged in the Statement of Facts section and a review of such section reveals that allegations and exhibits supporting those "upon information and belief" concerns that Defendant now voices appear in significant number.  (FAC ¶¶ 11-38)  Plaintiffs have indeed accompanied their "upon information and belief" allegations with factual statements, exhibits, and allegations on which such other allegations are founded.  See e.g. *Prince v. Madison Square Garden*, 427 F. Supp. 2d 372, 385 (S.D.N.Y. 2006).

Strangely Defendant attempts to convert Plaintiffs own allegations into statements that Defendant would like to refute rather than acknowledging their sufficiency for 12(b)(6) purposes, keeping in mind that factual allegations are to be deemed true.  Defendant spins the FAC to try to argue that the FAC is nothing more than contradictory to the Risk Factors of the Investment.  However such statement in and of itself undermines Defendant's position relative to the motion to dismiss.  First the question of whether the allegation is contradictory to the Risk Factors is irrelevant given that factual allegations are to be deemed true.  Moreover, Defendant's argument is fundamentally premised on the concept that the Risk Factors themselves are true.

Indeed, like Defendant's statements and representations to Plaintiffs, such information was not accurate.   That the Risk Factors provided Plaintiffs with the same false information that Defendant provided to Plaintiffs does not undercut the allegation within the FAC.   Rather it supports the FAC.   Indeed, Defendant provided the false information and made the false statements to Plaintiffs *prior* to ever providing the documents with the Risk Factors to Plaintiffs. Moreover, Defendant seems to utterly miss the point.   The claim is that Defendant Victor and Lasersculpt are essentially one and the same and that as a result of the various failures to adhere to corporate formalities, insufficient funding, personal use of funds by Victor, and other facts and allegations set forth in the FAC supporting the alter ego theory, the Lasersculpt corporate veil should be pierced and Defendant Victor should not receive the protection of such purported corporate liability immunity.   Thus even if Plaintiff were to have executed a document with Risk Factors that Defendant claims contradicts the fraudulent statements made by Defendant personally, the mere fact that the Defendant individual (Victor) and sham company (Lasersculpt) are one and the same eviscerates the concept of an investor's ability to waive the risk factors. Plaintiffs were fraudulently induced into making a loan and investment with Victor on Victor's representations—the Risk Factors do not bear on whether such representations were false or whether they were a basis for Plaintiffs moving forward to even contemplating the venture and investing in the enterprise.   Defendant cannot hide his fraud behind purported risk factors— otherwise no investor could ever be protected from unscrupulous and self dealing individuals searching for unsuspecting persons to prey upon so as to con them into handing over funds to purportedly finance a fictitious enterprise established only to line the pockets of the swindler.

Defendant next complains about Plaintiffs' allegations regarding Defendants failure to adhere to corporate formalities and again weakly relies on the you can't plead upon information and

18

belief rhetoric.  However, as stated previously, factual allegations are to be deemed true for motion to dismiss purposes.  Moreover, contrary to Defendant's contentions Plaintiffs have pled allegations sufficient to justify the alter ego claim and that corporate formalities were not followed.  (See e.g. FAC ¶¶ 29 and 56)  Indeed contrary to Defendant's single argument that Plaintiffs allegations should fail for not demanding corporate books under Delaware law, the FAC specifically indicates that Defendant simply failed to provide such information.  Moreover, the Delaware law only establishes a "right" to the documents and not an obligation to obtain them, especially where the purported company and/or its principals are entirely obstructive and unwilling to provide information.  Indeed this is not unlike the concerns raised during the pendency of this action, wherein Defendant refused to produce documents until such time as Plaintiffs amended their Complaint—even though Defendants were obligated under the Federal Rules to produce such documents before that time.  See e.g. *Residential Funding Corp. v. DeGeorge Financial Corp.*, 306 F.3d 99, (2d. Cir. 2002) ("Just as the intentional or grossly negligent *destruction* of evidence in bad faith can support an inference that the destroyed evidence was harmful to the destroying party, (citation) so, too, can intentional or grossly negligent acts that hinder discovery support such an inference, *even if* those acts are not ultimately responsible for the unavailability of the evidence ….." (emphasis in original)).

Oddly, Defendant also supports his challenge to the well pled allegation, that Defendant Victor siphoned off funds, by again claiming that Plaintiffs essentially failed to exhaust their administrative or Delaware corporate law remedies.  However as stated in FAC ¶29 Defendant failed to provide the requisite information even upon request.  Nevertheless Defendant wants to argue that Plaintiffs cannot allege "upon information and belief" because Plaintiffs should have the information that Defendants did not produce upon request.  This is precisely like Defendants'

subsequent conduct relative to the discovery requests—Defendants stonewalled and refused to produce the documents in compliance with legal rules and requirements and now argue that Plaintiffs should be penalized because Plaintiffs may not have information that Defendants were obligated to turn over.

Defendant also bleakly attempts to counter the shocking use of funds by Victor for his own purposes whether veiled a rent payments or otherwise and further attempts to justify the outlandish purported "salary" Victor siphoned from the entity without justification. Defendant seems to argue that charging rent to separate corporations respects the corporate form. However the point is that Victor was renting the identical space to more than one purported company at the same time and for a space that simply could not accommodate the supposed rent sharing concept that Defendant now seems to allege. The premises are relatively small from a corporate perspective and are in truth the premises at which Dr. Steven Victor practices medicine through Victor Orris Dermatology. The space is simply not substantially large enough to accommodate the three, four, or five companies, including employees and equipment and supplies and other related facilities. Nevertheless Defendant now disingenuously argues that he is renting out the space on a rent sharing basis. This is nothing more than a sham whereby Victor preys on investors and shareholders of companies he purports to be starting or funding. It appears he sucks in the investors through slick salesmanship and slight of hand and misrepresentation; sets up the company at the identical location of his medical practice on which he has a mortgage or owes money to the IRS as a result of personal liens; and then uses the funds obtained through the purported investments to pay into this so-called rent sharing scheme to simply to siphon off the funds for his own purposes. Such is what the FAC alleges. It is not "completely rational business conduct" to swindle monies from investors you conned into funding a hoax of a

20

company only to use such funds to pay for your own personal needs such as your own personal mortgage or your entirely unrelated medical practice expenses.

Nevertheless, these sort of arguments and disputes are appropriate for resolution during the post pleading phase.  The fundamental question now is whether Defendant plausibly can understand the basis for the claim.  And indeed he can.  He has gone so far as to explain what he understands Plaintiffs' claims to be and then provides an alternate explanation for the facts.  Fundamentally Defendant has simply facially and fatally undermined his own Motion.

The same is true relative to each and every of Defendants attacks on Plaintiffs factual allegations.  Defendant does nothing more than provide the Court with alternate explanations of the facts—but the facts as alleged are to be deemed true at this stage.  So too does Defendant attempt to explain away the unconscionable salary Defendant siphoned from Lasersculpt and the funds invested in such venture.   Significantly even Defendants admit through Defendant Lasersculpt's Answer that Victor took the salary for services at least partly unrelated to Lasersculpt.  Indeed Defendant "admits that for the period August 2007 to June 30, 2009, LaserSculpt paid defendant Victor a salary of $250,000 for his services as CEO of LaserSculpt and its predecessor VPI." (Dkt. 24, p. 4, ¶27) (emphasis added.)  In no way were Plaintiffs ever contemplating investing in the VPI venture.  In fact the so called Risk Factors, Defendant so heavily relies upon professes that VPI is an entirely separate and distinct company.

Finally, contrary to Defendant's assertion, the facts that Defendant provided shares in Intellicell Biosciences upon the default of other Lasersculpt obligations and the similar indication to provide Intellicell shares to Plaintiffs based upon the default on the Note are highly relevant and admissible.  Indeed, Lasersculpt has already filed an Answer indicating willingness to entry of judgment against it for the default on the Note—Defendant concedes this fact.  (Motion, p. 2)

As such Lasersculpt does not dispute the amount of the Note, the terms of the Note, the fact that the Note has been defaulted upon resulting in damages to Plaintiffs.  Indeed, Defendant Victor's conduct relative to his personal shares in Intellicell Biosciences can be admitted as factual admissions regarding the Note and the default on the Note or evidence of Defendant Victor's pattern of such settlements or evidence of the agreements themselves or policy of entering into such agreements (if potentially not the terms).  *Inline Connection Corp. v. AOL Time Warner Inc.*, 470 F. Supp. 2d 435, 440 (D. Del. 2007) ("The restriction of Rule 408 does not apply when compromise evidence is offered for a purpose other than to prove the specific details of a negotiated claim.  For example, evidence of fraudulent statements by a party made in order to settle litigation would be admissible. Rule 408, however, 'expressly relates to evidence of efforts toward "compromising or attempting to compromise a *claim* which was disputed as to either validity or amount."'  Evidence of agreements in general, or a policy of making a particular type of agreement may be relevant and not prohibited by Rule 408 as long as it 'does not extend to the terms . . . in settlement of litigation."); see also *Deluca v. Allied Domecq Quick Serv. Restaurants*, 71 Fed. R. Evid. Serv. 380, 2006 WL 2713944 (E.D.N.Y. Sept. 22, 2006), citing and paraphrasing *Sunstar, Inc. v. Alberto-Culver Co*., No. 01 C 0736, 2004 WL 1899927, at * (N.D.Ill. Aug. 23, 2004) (holding that Rule 408 "does not appear to cover compromises and compromise offers that do not involve the dispute that is the subject of the suit") (quoting *Bradbury v. Phillips Petroleum Co*., 815 F.2d 1356, 1363 (10th Cir.1987)); *Carr v. Health Ins. Plan of Greater N.Y., Inc*., No. 99 Civ. 3706(NRB), 2001 WL 563722, at *4 (S.D.N.Y. May 24, 2001) (holding that statements from settlement negotiations admissible "because they are being introduced not to prove liability for claims being settled, but for an entirely separate claim of retaliation").

Here the challenged offer of compromise related to the default on the Note and were purportedly in furtherance of resolution of the claim that the Note was breached—this is entirely different from that of admitting the evidence to support piercing the corporate veil. Moreover, as there is no dispute by Defendant Lasersculpt regarding the Note or the claim as to the Note, its validity or amount FRE 408 is inapplicable relative to the offers to compromise and/or related agreements by Victor.

The FAC properly and sufficiently pleads all of the requisite elements of a claim for piercing the corporate veil and provides sufficient supporting factual allegations. Indeed, pursuant to Defendant's original motion, Plaintiffs addressed the pleading requirements that Defendant believed the FAC needed. (FAC ¶¶ 46-62). Each element is pled and factually supported. As such the FAC is pled well sufficiently to warrant denial of Defendant's instant Motion.

## III.   <u>CONCLUSION</u>

Plaintiffs First Amended Complaint is indeed well pled and sufficiently so to easily pass scrutiny with respect to Defendant Steven Victor's current Motion to Dismiss. In fact, Defendant does nothing more in his Motion that point to factual allegations and attempt to explain away their factual significance. In each, Defendant goes so far as to provide Defendant's own interpretation of the allegation. Such in and of itself indicates that Defendant plausibly understands the nature and substance of the claims alleged—whether the facts are supported by evidence such as documents to be produced through the demanded document production is an issue for the post pleading phase, not ripe for decision on a 12(b)(6) Motion to Dismiss. Plaintiffs of course contend that the allegations are and will be further supported through Defendant's required discovery responses/production; however Defendants refused to produce

documents prior to the filing of the FAC although the time to respond and produce expired prior to the required filing date.

Therefore, Plaintiffs respectfully request that this Court deny Defendants Motion in its entirety.


Dated: January 18, 2012                **MICHELMAN & ROBINSON, LLP**


                                       BY:_____/s/ Torin A. Dorros_____
                                            TORIN A. DORROS
                                            *Attorneys for Plaintiffs,*
                                            *ANTONY P. THEKKEK and*
                                            *PREMA P. THEKKEK*